D. W. & J. G. Vischer, plaintiffs in error, vs. The Talbotton Branch Railroad Company, defendants in error.

[1.] Where the book of minutes containing the proceedings of a corporation, is produced in response to a notice from the opposite party, and portions of it read on the trial, the corporation may read such other portions of it as relate to the same subject-matter.

[2.] The law in this case having been fairly submitted, and there being sufficient evidence to sustain the verdict, a new trial is refused.

[2.] What is the measure of damages against a railroad company, for fraudulently hindering a contractor from completing its road? *Quere?*

In Equity. In Talbot Superior Court. Bill for Discovery and Relief. Tried before George A. Hall, an Attorney at Law, selected by the parties. March Term, 1861.

The bill alleged that in November, 1852, the defendants

in error contracted with the plaintiffs in error, that the latter should do the work of grading, etc., on the Talbotton Branch Railroad at the prices fixed by certain sealed proposals sent in by the plaintiffs in response to an advertisement published by the defendants, inviting such proposals.  That the plaintiffs expended money in the hire of hands, the purchase of animals and impliments and other supplies, for the execution of the work, and entered upon, and did actually commence its execution, when the defendants gave them notice that the Company had declined for the present to carry on the work, on account of pecuniary embarrassment, and requested them to abandon the contract and stop work under it for a short time, until the Company could better see their way.  That the plaintiffs, thereupon, stopped work, but refused to abandon the contract on account of the great expense they had incurred.  That after this, the defendants declined further to prosecute the work, and prohibited the plaintiffs from proceeding therein.  That if they had been permitted to proceed, their profits would have amounted to ten thousand dollars, or other large sum; and that their expenditures in outfit and for labor, the items of which were minutely set forth, amounted to the sum of two thousand four hundred and seventy-five dollars.

The bill stated that the facts alleged in the same could not be established by the rules of the common law, and that the plaintiffs could have no adequate relief but in a Court of Equity.  It prayed for compensation in damages, and for general relief.

By an amendment, the bill was made to allege further, that after the plaintiffs had prosecuted the work with thirty-five or forty hands over forty days, notwithstanding, by the contract, the work was to be paid for in cash, the Company did not and would not pay anything whatever; but pretended they would do so, and made a pretended effort to do so by assessing the stockholders twenty-five per cent on their subscriptions, a sufficient portion of which being collected to pay the officers of the Company and some other debts, the

Company had a meeting at which they agreed to pay off the debts due their members, and the stockholders refused to pay any more of their subscriptions. That the officers resigned until the Company could not do any kind of business for want of a quorum; and the plaintiffs being thus treated, and having no means to carry on the work without compliance with the contract by the Company, they were thus fraudulently and wrongfully compelled to abandon the contract.

The amendment then went on to enumerate the exact quantity of the several kinds of work embraced in the contract; and charged that the profits on the same would have been $7,516.99, which amount, added to the money expended by the plaintiffs and their losses on the hire of negroes engaged for the work, made the entire loss which the plaintiffs sustained by reason of the premises, $10,286.99.

By another amendment, the bill was made to allege that the plaintiffs would have been entitled to fifty thousand dollars for completing the work under the contract, which it averred was entire. That the defendants fraudulenly compelled them to abandon the work, or to suspend it, by false and fraudulent pretences, by resigning and refusing to make any preparation for payment. It averred that the plaintiffs always had been and were still willing, and now offered, to perform, and prayed a decree for the entire value of the contract.

The bill and amendments were answered on oath in behalf of the defendants, by Z. B. Trice, the last President of the Company; and the answer denied positively that any contract was ever concluded, or that any work had ever been executed by the plaintiffs in pursuance of a contract. On the contrary, it affirmed that the plaintiffs expressly refused to contract on the terms proposed by the Company.

At the trial, a great deal of evidence was introduced, and some offered by the plaintiffs was rejected. The jury found a general verdict in favor of defendants; and the plaintiffs moved for a new trial, which the Court refused.

The further facts of the case, so far as they are reqisite to an understanding of the points of law decided by the Supreme Court, are sufficiently stated in the opinion delivered by :—

WALKER, J.

We do not propose to examine severally the various errors alleged in this chaotic, and unnecessarily voluminous record. We have carefully considered all of them, and will announce the general conclusions to which we have come.

[1.] Complainants notified defendant to produce, to be used as evidence, the book of minutes kept by defendant, of its proceedings. The book was produced, and complainants read various portions of it to the jury; in one or two instances reading only a portion of the action of the board of directors as there recorded, although other portions of the proceedings of the same meeting related to the same subject matter. In the argument of counsel of defendant, other portions of the book, not read by complainants, but relating to the same subject matter, were. read and insisted on as evidence *already before the jury*. This was objected to, and " the Court ruled that the book having been produced on notice, and portions of the same having been read to the jury by the complainants, that the whole of said book, so far as the same related to this matter, was already in evidence, and refused to exclude any part of the same. In *Banks vs. Darden* 18, *Ga. R.* 341, this Court says, " when books are admitted in evidence, *they are testimony before the jury, as to all entries appertaining to the same transaction*; still, the party offering them may select and read to the jury such portions as answer the purpose for which they were introduced by him, leaving it to the opposite party to submit any other part that he may see fit." This would seem to prescribe the course pursued by the Court in this case.

The argument of counsel, as we understand it, is, that only such portions of the book as had been read, was in evidence;

and that although the other portions relating to the subject matter in controversy might be read by defendant, yet this would make it the evidence *of the defendant* and give to plaintiffs the conclusion of the argument, and any other right which they might have, growing out of the fact that this was the evidence of defendant and not of complainants. It is insisted that the facts in the Banks and Darden case, *supra* 325, show this to be the rule laid down by this Court. It is a sufficient repay to all this now, that no such point was made in the Court below, and this renders ·a decision of it here unnecessary, if not improper. Most clearly the defendant had the right, under the ruling of this Court, to read from the book " all entries appertaining to the same transaction," and that was, in effect, what the Court below ruled. If such reading gave complainants other rights, about which we express no opinion now, they should have insisted upon those rights at the proper time, and it is to be presumed would have obtained them. See, also, *Wooten & Co. vs. Nall* 18, *Ga. R.* 609.

[2.] Was there a contract express or implied entered into between these parties for the construction of the road? This was the controlling question in the case. Much testimony was before the jury *pro* and *con*, and while we are not prepared to say that we would have found the same verdict, yet we do not think it so " strongly and decidedly against the weight of evidence," as to require us, on that ground, to set it aside and grant a new trial. There was evidence on both sides, and where there is as much as there is in this case, and the law has been fairly submitted, we are unwilling to disturb the finding.

Was the law fairly submitted? We have looked very carefully into all the requests to charge, and the charge as given, and we think the charge was as favorable for the complainants as, under the law, they could ask.

The jury were properly instructed as to the amount of evidence necessary to overcome the answer of defendant. They were told that if there was a proposition made on the

one side, and accepted on the other, the contract was made; that if the defendant first violated the contract, complainants were entitled to recover upon proof of the damage sustained by such violation; and that if complainants, under the authority, or direction, or at the instance of defendant, or of defendant's authorized agent, expended money and means in preparing to undertake said work, *though no contract was ever made*, the complainants are entitled to recover the money and means thus expended, upon proof thereof. We think this was submitting fairly to the jury the merits of the controversy. If there was no proposition made and accepted; if there was no breach of contract by defendant; if there was no outlay at the instance of defendant, in expectation of a contract which was not made, where is complainants' cause of action? The jury passed upon these issues: the Court below was satisfied with the finding, and we are not willing, under the circumstances, to disturb it.

[3.] Much was said as to the proper measure of damages in the case; and it is claimed, especially, that the Court erred in ruling out Mr. Hull's testimony, introduced for the purpose of showing the amount of damages complainants sustained, or rather what amount of profits they would have made if they had completed the work according to the stipulations of the alleged contract. The jury having found the facts against the complainants, renders it unnecessary to decide what would have been the proper measure of damages in case the finding had been otherwise. Mr. Hull, from a profile of the projected road, makes a calculation of the quantity of work to be done, an "approximation" rather, and says "under ordinarily favorable circumstances some profit should be made on each of the "items of work at the price proposed. He enumerates various circumstances which it would be necessary to include "in order to estimate accurately the cost," and adds, "then, the weather would greatly affect the result, so that no exact calculation could be made until the job was finished." "A good deal would depend on whether the hands were able to work,—much would depend

on whether they were well or sick, or runaway. If they were sick or runaway most of the time, the contractor would make nothing." "Railroad contractors, when experienced, do get frequently mistaken, as to underground work, and they sometimes find it to their interest to abandon a contract, and do sometimes abandon them." The proposition of complainants is to ascertain, by this sort of testimony, how much money defendant shall pay them. In the *Coweta Falls Manufacturing Company vs. Rogers*, 19 *Ga. R.* 417, this Court decides that "prospective profits, which are speculative and conjectural, are usually too remote and uncertain to enter into the estimate of damages to be allowed for a breach of contract." In delivering the opinion in this case, Lumpkin, C. J., says, "we are inclined to think that this whole testimony, as to the gains which the plaintiff would have derived from this contract, had he not been prevented from realizing them by the delinquincy of the defendant, should have been rejected as too contingent and speculative, and too dependent upon the fluctuation of the markets, the chances of business, and other casualties, as to enter into a safe or reasonable estimate of damages. And in lieu thereof a calculation should have been made of the loss actually sustained by the hire of hands, the interest on the investment, and solid *data* like these, as the *criteria* of loss by the detention of the machinery"—page 420. We are aware that this case is not, in its facts, like the one at bar, but how very much alike in the *uncertainty* of the evidence by which *the amount of damages* is to be ascertained.

Again, in the *Water Lot Company vs. Van Leonard*, 30 *Ga. R.* 561, this Court decides, "that the measure of damages was the interest on the investment for the time the machinery was not employed for want of water," caused by the failure of the other party to perform his contract; and affirms the case in the 19 *Ga.* We are aware that some cases hold that the proper measure of damages is, the difference between the price to be paid and the actual cost of performing the contract. There may be cases where this may

be the correct rule, but the cases already cited show the strong tendency of this Court to discard "speculative profits" and be controlled by "solid *data*," in estimating the amount of damages to which a party may be entitled for a breach of contract.   We do not intend to be understood as laying down a rule for ascertaining the amount of damages a party, for a breach of contract of this kind, would be entitled to.   It will be time enough to do so when the case before us shall make it necessary.

Judgment affirmed.

A. W. HAMMOND & SON, for plaintiffs in error.

B. HILL, for defendants.