FELIX H. HENDERSON, plaintiff in error, *vs.* JOHN D. POPE, defendant in error.

Suit was instituted upon the following written paper, to-wit: "Atlanta, Georgia,, August 4th, 1866. Georgia National Bank of Atlanta, Georgia. Ninety days after date, pay to F. R. Bell, or order, one thousand dollars." Signed "Massey & Herty," endorsed by F. R. Bell and John D. Pope, which was protested for non-payment on the 2d November, 1866: *Held,* that the paper was a bill of exchange, and entitled to *three days of grace* before being protested for *non-payment,* and was *not a check payable at Bank at sight, or on demand,* as contemplated by the 2742, and 2749 sections of the Code, on which *no days of grace are allowed.*

*Held,* also, on a motion to dismiss the writ of error in this case, that the 240th section of the Code, which provides for the selection of a practicing attorney of the Court, to preside in cases in which the Judge of the Superior Court is disqualified, and authorizes such attorney selected by the parties litigant, to exercise *all the functions* of a Judge in that case, is not a violation of either the letter or the spirit of the Constitution of this State, and that a writ of error will lie from this Court to correct such errors as may be committed by that *pro tempore* Judge holding the Superior Court in a case in which the Judge of the Circuit is an interested party. BROWN, C. J., dissenting as to this.

Bills of Exchange. Constitutional law. Decided by Hon. DENNIS F. HAMMOND, presiding by consent. Fulton Superior Court. October Term, 1868.

Judge Pope being the defendant, by consent Judge D. F. Hammond, an attorney-at-law, was made Judge *pro hac vice.* The cause was assumpsit upon the following paper:

"ATLANTA, GEORGIA, August 4th, 1866.
"Georgia, National Bank of Atlanta, Geo. Ninety days after date, pay to F. R. Bell, or order, one thousand dollars, ($1000 00.)
MASSEY & HERTY.
Endorsed, "John D. Pope, F. R. Bell."

The plaintiff introduced the paper and a protest of the same for non-payment, dated 2d of November, 1866. In the protest the paper is called a check. The defendant introduced the notice of protest served on him, but as no point is made on it, its form is immaterial.

Henderson *vs.* Pope.

The evidence being closed, defendant's attorneys insisted that said paper was a bill of exchange, and that defendant was entitled to three days of grace, that the demand of payment and the protest were premature, and therefore the endorser, Pope, was discharged. The Judge so held, and directed the jury to sign a verdict for said defendant.

Plaintiff's attorneys say that the Judge erred in holding that said paper was a bill of exchange entitled to days of grace before demand of payment and protest, and in holding that any demand and protest were necessary to bind the endorser on that paper. When the cause was called for trial in the Supreme Court, counsel for defendant in error moved to dismiss it upon the ground that a writ of error to this Court did not lie from a decision by an attorney selected by the parties.

Ezzard & Hulsey, for plaintiff in error, said the paper sued on is a check only. 3d. Kent's Com., 75 ; Story on Pr. Notes, sections 487, 8, 9, 90 ; 1st Par. on Con., 286, *in re Brown;* 2 Story's R., 503 ; Harker vs. Anderson, 21 Wenddell's R., 372 ; Daniel vs. Kyle & Barnett, 1st Kelly (Ga.) R., 304.

O. A. Lochrane, (by the Reporter,) for defendant in error, said the paper was a bill of exchange, and entitled to days of grace. Story on B., sec. 3 ; 21 Wend. R., 372 ; 7 T. R., 419, 426 ; 3 Johnson's Cases, 5, 7, 8 ; Byles on B., s. p. 10, 162 ; 2 Knott & McCord, 256 ; 10 Foster (N. H.) R., 264 ; 41st Maine R., —; 18 Grattan's R., (Va.,) 759 ; Chitty (Sr.) on B., 322 ; Chitty (Jr.) on B., 24, 26 ; Story on Prom. Notes, secs. 487, 489 ; 5 Ohio R., 13, 18 ; 1 Gray (Mass.) R., 606 ; 1st Kelly (Ga.) R., 305 ; 5 Ga. R., 250 ; 3 K. Com., 104 N.; 4 Yerger's R., 210 ; 4 California R., 35 ; 25 Wend. R., 673 ; 6 Hill R., 174 ; 8 N. Y., 190 ; 5 Harrington R., 305. For the authorities cited on the question of jurisdiction see the opinions of the Court on that point.

Henderson *vs.* Pope.

WARNER, J.

This was an action by the plaintiff in the Court below against the defendant as indorser upon the following described written paper : " Atlanta, Geo., August 4th, 1866. Georgia National Bank of Atlanta, Geo. Ninety days after date pay to F. R. Bell, or order, one thousand dollars. Signed Massey & Herty." The paper was endorsed by F. R. Bell and John D. Pope, the defendant. The paper was protested for non-payment on the 2d day of November, 1866, and *the* question in the case is, whether the paper sued on is, in law, an inland bill of exchange, and therefore entitled to the days of grace allowed by law on paper of that description before protest for the non-payment thereof.

According to the legal definition of a bill of exchange, the paper set forth in the record comes fully within that definition, and as such was entitled to the days of grace allowed by law before being protested for non-payment. A bill of exchange, as defined by Blackstone, " is an open letter of request from one man to another, desiring him to pay a sum named therein to a third person on his account." 2d Bl. Com., 466. In the case of Harker vs. Anderson, (21st Wendell's Rep., 372,) the authorities bearing on the question whether a check is a bill of exchange, were elaborately examined and reviewed by Mr. Justice Cowen. Chancellor Kent defines a bill of exchange to be " a written order, or request, by one person to another, for the payment of money absolutely and at all events." 3d Kent's Com., 74. A check, he says, partakes more of the character of a bill of exchange than of a promissory note. It is in form and effect a *bill of exchange.* Ibid, 75. When a bill is payable at a certain time *after* date or sight, or *after* demand, it is not payable at the precise time mentioned in the bill, *days of grace* being allowed, but in the case of bills payable *on demand,* no such days are allowed : Chitty on Bills, 263.

The 2749th section of the Revised Code declares that "bills, notes, or other paper, payable *on demand,* are due immediately.

Henderson *vs.* Pope.

When no time is specified for the payment of a bill, or order, it is due as soon as presented and accepted." The 2742d section of the Code declares that "three days generally known as days of grace, and by custom allowed on papers payable at banks or brokers' offices, shall not be allowed upon any bill or draft payable at *sight*." A bill, check, or draft, drawn upon a bank, payable at *sight*, is not entitled to the days of grace, under this provision of the Code, and it would seem that bills, notes, checks and drafts, payable *on demand at a bank*, would come within the reason of the rule prescribed for paper payable at *sight*, as such paper is made due *immediately* by the 2749th section of the Code. In our judgment, the paper sued on in this case is a bill of exchange, and not being payable either *at sight* or *on demand*, was entitled to the three days of grace before being protested for non-payment. Let the judgment of the Court below be affirmed by the unanimous judgment of this Court upon this branch of the case.

When this case was called upon the docket, a motion was made to dismiss it for want of jurisdiction. Upon that question this Court are not unanimous, the majority of the Court being of the opinion the motion to dismiss should be overruled. The 340th section of the Code declares that "when from any cause the Judge of the Superior Court is disqualified from *presiding* he shall procure the services of a Judge of another circuit to try said cause, if he has to appoint an adjourned term for that purpose. If the parties litigant consent thereto, and select any attorney practicing in the Court, to *preside* in such a case, the Judge shall have such consent entered on the minutes, and the attorney so selected shall exercise *all the functions* of a Judge in *that case*." The defendant in this case was a Judge of the Superior Court, duly commissioned and qualified as such, according to the Constitution and laws of the State, and was in the discharge of, and performing the duties and functions of such Judge in holding the Superior Court of Fulton county, in which Court this suit was instituted by plaintiff against the defendant. It is a fundamental principle of the law that no man can be a judge in his *own case*. This is a case in which the

Judge of the Superior Court of Fulton county was a party, and therefore disqualified from *presiding* on the trial thereof in that Court. In all such cases the Code makes provision for an attorney of the Court practicing therein, the parties litigant consenting thereto, to *preside* therein on the trial thereof, and for that purpose *only*, invests such attorney with *all the functions* of a Judge in *that case*. But it is contended that the Court which tried this case, and certified the bill of exceptions to this Court, was not *the Superior Court*, as contemplated by the second section of the fifth article of the State Constitution, which confers jurisdiction upon this Court to correct errors from the Superior Courts. The Court in which this case was tried was organized and being held as a Superior Court in accordance with the Constitution and laws of the State, and by the proper officer appointed and commissioned by the Governor for that purpose. When this case was called upon the docket of that Court the presiding Judge was a party defendant thereto. Being disqualified from presiding on the trial thereof, he left the bench, and a practicing attorney of the Court was selected to preside on the trial of *that case*—the Superior Court, which had been duly organized by the proper officers, being in open session. It cannot be questioned, that when the presiding Judge, (who is the party defendant in this case) left the bench, the Superior Court of Fulton County was in legal session as a Court; nor can it be questioned, that when the presiding Judge resumed his seat upon the bench, after the trial of this case, the Superior Court of Fulton county was in legal session as a Court. The simple truth is, that this section of the Code does not conflict with any provision of the State Constitution, either as it regards the *appointment* of judicial officers, or in regard to the jurisdiction of this Court for the correction of errors from *the Superior Courts*, notwithstanding the circumlocution of argument, assumptions and *plausible* reasons which have been or may be offered to the contrary.

The General Assembly had the power to make all laws and ordinances *consistent* with the State Constitution, and

not *repugnant* to the Constitution of the United States, which they might deem necessary and proper for the welfare of the State. The Code provides for the selection of a practicing attorney of the Court to *preside in the Superior Court* in cases in which the presiding Judge of that Court is *disqualified by law*, and the attorney so selected shall exercise *all the functions* of Judge in *that case.* The selected attorney is not clothed with *general* powers to act as a Judge in all cases, as contemplated by the Constitution, but is simply clothed with the *functions* of a Judge to try a *special* case in the Superior Court, in which the Judge, who holds his office under the Constitution, is *disqualified* from trying. Is there anything in this provision of the Code *inconsistent* with either the letter or spirit of the State Constitution? The attorney selected is not a Judge of the Superior Court as contemplated by the Constitution, but simply performs the functions of a Judge in the Superior Court in a *special* case, in which the constitutional Judge is *disqualified* from trying in *that Court*, and his judgment in that *special* case is the judgment of the Superior Court, and this Court has jurisdiction to correct the errors of the Superior Court. In *Taylor vs. Smith*, 4th Ga. Rep., 133, this Court held that the Act of 1801, which provided that three or more of the Justices of the Inferior Court should preside at the trial of cases in which the Judges of the Superior Courts were parties or interested, to be constitutional. It is true the reason given for the decision in that case was that the Constitution vested the judicial powers of this State in the Supreme, Superior, Inferior, and Justices Courts, and such *other Courts* as the Legislature shall from time to time ordain and establish, but it does not follow that that was the *only reason* that might have been given for sustaining the constitutionality of the Act in that case. Besides, the Act of 1801 did not clothe the Justices of the Inferior Court with all *the functions* of a Judge in that case," as the Code now does. The case of *Taylor vs. Smith* is however a *precedent* for sustaining the *jurisdiction* of this Court in the case now before us, for in that case the writ of error was considered and adjudicated, and the judgment of

Henderson *vs.* Pope.

the Court below was affirmed. The judgment of the Court in that case (no matter what reasons were given for it) sustained the writ of error to the Court below from this Court, and is therefore a decision of this Court upon the question of *jurisdiction*, when the Superior Court was held by three Justices of the Inferior Court *presiding* therein, in a case in which the Judge of the Superior Court was a party. This Court must have considered that *the Court* in which the three Justices of the Inferior Court *presided* was *the Superior Court*, otherwise they would not have heard the cause and rendered a verdict therein. In the case of *Walton vs. Bethune*, 37th Ga. Rep., 319, this Court held *jurisdiction* of a case, decided by an attorney, in which the Judge of the Superior Court was interested, as provided by the 240th section of the Code, and affirmed the judgment of the Court below in that case upon a writ of error to the decision of a *pro hac vice* Judge. See the case of *Vischer vs. The Talbotton R. R. Co.*, 34 *Ga. Rep.*, 536. For the reasons given, I am of the opinion that his Court has jurisdiction to hear and determine the writ of error to the Court below in this case.

BROWN, C. J., dissenting on the question of jurisdiction.

The Judge of the Superior Court being a party to this case, it was agreed, in conformity to the statute, that Hon. Dennis F. Hammond, an attorney of said Court, should preside and try the case. A bill of exceptions was taken to his rulings on the trial, and a motion is now made to dismiss the case here, because this Court has no jurisdiction of it.

It will not, I suppose, be denied that this is a Court of limited jurisdiction, and that it must find the grant of its powers in the Constitution and laws of the State. Our jurisdiction is thus defined, in article 5, section 2, paragraph 2, of the Constitution: "The Supreme Court shall have no original jurisdiction, but shall be a Court alone for the correction of errors, from the *Superior* Courts, and from the *City* Courts of Savannah and Augusta, and such other like Courts as may be hereafter established in other cities."

The jurisdiction of this Court is therefore limited to the correction of errors from the Superior Courts of this State, and from certain City Courts. It is not pretended that the Court which tried this case was a City Court. Was it the Superior Court of Fulton County? If so, this Court has jurisdiction of this case. If not, we have no authority to hear it.

What is necessary, under the Constitution, to make a Superior Court? The first, and indeed the only indispensable pre-requisite is, that there be a Judge of the Superior Courts present presiding, at the proper place, and at the time fixed by law, and that there be parties litigant. The Constitution declares that the Superior Courts shall sit in each county, not less than twice in each year, at such times as have been or may be appointed by law. Again, it declares, that the Court shall render judgment, without the verdict of a jury, in all civil cases founded on contract, where an issuable defense is not filed on oath. In the class of cases to which this belongs, it is not necessary, to constitute a Superior Court, that there be a jury in attendance, unless an issuable plea is filed on oath. Nor is the presence of a Clerk or a Sheriff indispensably necessary to the validity of a judgment of the Superior Court. But there can be no *legal judgment* of the Superior Court without the presence of a Judge of the Superior Court.

The important inquiry then is, what is necessary to make a Judge of the Superior Court, and how, and by whom must he be appointed. The law prescribes certain qualifications which he must have. He must have been ten years a citizen of this State, and one year an inhabitant of the circuit over which he is to preside. He must have been five years at the bar, etc. So much for his qualifications. Now as to his appointment. Article 5, section 9, of the Constitution, declares that the Judges of the Supreme and Superior Courts shall be appointed by the Governor, with the advice and consent of the Senate. There is no exception made to this rule, save in case of appointments to fill vacancies, which may be made by the Governor alone in the absence of the

Senate. Thus, it appears that the power to appoint a Judge of the Superior Courts is confined to the Governor and Senate alone; and neither the Legislature, nor any one authorized by them, has any such power of appointment. It would seem to follow conclusively, as there can be no Superior Court without the presence of a Judge of the Superior Court, and as no one but the Governor and Senate has the power to appoint a Judge of the Superior Court, that the Court held by the attorney in this case, chosen and appointed by the parties, was not the Superior Court of Fulton county. And it also follows, if it was not the Superior Court, that we have no power to review its decisions, when objection is made to our jurisdiction, as in this case.

But I am met with sections 240 and 241 of the Code, which are in these words: "When from any cause, the Judge of the Superior Court is disqualified from presiding, he shall procure the services of a Judge of another circuit to try said cause, if he has to appoint an adjourned term for that purpose. If the parties litigant consent thereto, and select an attorney practising in the Court to preside in such a case, the Judge shall have such consent entered on the minutes, and the attorney so selected shall exercise all the functions of Judge in that case." "If any Judge does not comply with the provisions of the preceding section, within a reasonable time, when it is in his power to do so, it is a ground of impeachment."

Now, it is claimed that the attorney selected under section 240 is, *pro hac vice,* a Judge of the Superior Courts in that case, and that the Court held by him is the Superior Court. Let us examine this position, and see if it is sound. The statute does not declare that the attorney so selected shall be a Judge *of the Superior Courts* for the occasion, but that he shall exercise the functions of Judge in that case.

But suppose I admit that the language of the Act is broad enough to cover it, and that it was the intention of the Legislature that he shall be Judge of the Superior Courts; then the question arises, is that Act constitutional? I think not. It is clearly in conflict with the Constitution, so far as

VOL. XXXIX—24.

Henderson *vs.* Pope.

it attempts to appoint a Judge of the Superior Courts by any other person than the Governor, as provided in the Constitution, and so far as it attempts to clothe the person so appointed with all the functions of a Judge of the Superior Courts, and to authorize him to hold the Superior Courts. The Constitution makes no exception in the case where a Judge of the Superior Courts is disqualified to preside. This is not a question of expediency or emergency. It is a question of power. If the Legislature has power to confer upon a person selected by the parties all the functions of a Judge of the Superior Court, with authority to hold the Superior Court, in a case where a Judge is interested, or was of counsel while at the bar, why has it not the power to confer the like dignity and authority upon a person selected by the parties in any case, in which either party will swear that he does not believe he can get an impartial trial before the Judge, or that he has no confidence in the legal ability or honesty of the Judge, or that he prefers to try his case besome other person in whom he has more confidence. If the Legislature has the power, for the cause set forth in section 240 of the Code, to appoint, or to empower others to appoint, a Judge of the Superior Courts, it certainly has as much power to appoint, or empower others to appoint, in either of the cases just mentioned. If it has the power in these cases, why not in any and all other cases? As a question of power, and this is such, where do you draw the line. When you depart from the Constitution, and admit the power of the Legislature to authorize the parties to appoint a Judge of the Superior Court in one case, why may it not authorize the President of the Senate or Speaker of the House to appoint in all cases?

But it may be claimed that the consent of the parties makes it legal. The consent of the parties may give the Judge power to render a judgment binding upon them, but consent of the parties in the Court below cannot make a man a Judge of the Superior Courts who is not such, nor can it confer jurisdiction on this Court in a case where it is not given by the Constitution.

Henderson *vs.* Pope.

If the Legislature may give the parties the power to appoint a Judge of the Superior Courts to try a particular case of a particular class, why may it not give them the power to appoint such Judge in any case of any other class? And if it may give the parties power to select a Judge and they refuse, why may it not, as it did at the late session, authorize the Clerk of the Superior Courts to "appoint a member of the bar to act as Judge in all cases in which the Judge presiding is interested, as counsel or otherwise, in the event that the attorneys do not or will not agree upon a member of the bar present to preside in such case?" If the first is Constitutional, why is not the last, and if the last is, where is the limit? When you admit the power of the Legislature to appoint a Judge of the Superior Court in a single case, not given them by the Constitution, do you not admit their power to enlarge their jurisdiction to an extent that may finally strip the Executive of the power which the Constitution has conferred upon him alone? The first misstep is usually the fatal one, and I am unwilling to take it.

But it is said that there must be some way of disposing of cases where the Judges are interested or disqualified. Two remedies are already provided within the constitutional limits. First, it is made the duty of the Judge of the circuit so disqualified, to hold an adjourned term and procure the services of another Judge to try the case, if in his power, on pain of impeachment. It may be replied, however, that the other Judge may refuse to hold the Court out of his circuit. This is not a reasonable supposition. It is his duty to do it, and the law presumes that every officer will faithfully discharge his official duties till the contrary is made to appear. The Constitution says of a Judge of the Superior Courts: He may act in other circuits when authorized by law. And it is no strained construction under well known rules, to construe *may* in this Act, prescribing the duties of a public officer, to mean *shall*. As it is made the duty of the Judge who is disqualified to procure the services of another Judge to try the cause, it is certainly the duty of that other Judge to do it. The law, in other words, makes it the duty of one·

Judge to do what it requires another Judge under pain of impeachment to procure him to do. If he could not show a good excuse, why might he not be impeached for refusing to do what the other will be impeached for failing to procure him to do, when they are officers of the same grade owing these reciprocal duties to each other and to the public?

But the Act under consideration gives another remedy, not by a legal appointment of a Judge of the Superior Courts, for the particular occasion, but by constituting another Court —a special Court—for this very purpose. For it must be borne in mind that I am not denying the legality of this Court. I only deny that it is the Superior Court, and I also deny that a writ of error lies from it to the Supreme Court. The Constitution declares that, the judicial powers of this State shall be vested in a Supreme Court, Superior Courts, Courts of Ordinary, Justices of the Peace, Commissioned Notaries Public, and *such other Courts* as have been or may be established by law. Now this is clearly one of these *other Courts* established by law for the trial of this particular class of cases.

This question is decided by this Court in the case of *Taylor vs. Smith*, 4th *Ga. R.*, 133, which arose under the Act of 1801. That Act was in these words: In all cases brought in said Superior Courts, or either of them, when either of the Judges thereof shall be a party or interested therein, it shall be the duty of three or more of the Justices of the Inferior Court to preside on the trial of the same. What substantial difference between that Act and the one now under consideration? In both the case must be brought and pending in the Superior Court, and the Judge must be disqualified to preside. In the one case three or more Justices of the Inferior Court preside on the trial. In the other, an attorney selected by the parties under the authority of the Act of the Legislature presides. In both cases those presiding have, as a necessary consequence, all the functions of a Judge in that case. In one case it is so expressed. In the other, the authority to preside in the case without qualification carries with it all the functions of a Judge for that case. Now let us see

Henderson *vs.* Pope.

how this Court classed the Court held under the Act of 1801 in the case where Judge Taylor was disqualified, and the three Justices of the Inferior Court came into the Superior Court and presided, just as the attorney selected by the parties did in this case. Warner, Judge, delivering the unanimous opinion of the Court says: "The judicial powers of this State are vested by the Constitution in a Supreme Court for the correction of errors, Superior Courts, Inferior Courts, and Justices Courts, and in such *other Courts* as the Legislature shall from time to time ordain and establish. The Act of 1801 *creates* a Court for the trial of causes in which a Judge of the Superior Court may be a party, or interested. *Special jurisdiction* is conferred by the Act on three or more Justices of the Inferior Court for the trial of certain specified causes. It was competent for the General Assembly, in our judgment, to *ordain* and *establish* a *tribunal* for the trial of causes in which a Judge of the Superior Court is a party, or interested." Here it is not pretended that the Court held by three Justices was the Superior Court of the county. It was, says this Court, a *tribunal ordained* and *established* by the General Assembly, upon which *special jurisdiction* was was conferred when it was *created* under the Act of 1801.

It is true the Supreme Court entertained a writ of error in that case, just as we have done in several cases under this statute at this term, after announcing doubts as to our jurisdiction, because no objection was made to the jurisdiction. Indeed the parties in the cases heard by us requested that no such objection should be raised, except in the case where but two Judges presided, and in that case the bill of exceptions was signed by the Judge of the Superior Court. If the Court in the case cited was one of those *other Courts* provided for by the Constitution, and established by the Legislature, and was not the Superior Court, how can this be held to be the Superior Court of Fulton county?

But it was objected that it could not be intended by the Legislature that a Court be established with jurisdiction to try causes, without a provision for the correction of its errors by this Court. Important rights have often been adjudicated

under Acts of the Legislature without any such provision. *Pope vs. Hays*, 30*th Ga. R.*, 539, presents such a case. There the widow and children of H. W. Shaw applied for the appointment of commissioners to set apart to them the year's support allowed them by law. The commissioners awarded them the sum of $800 00, with which they were dissatisfied, and they entered an appeal from the Court of Ordinary to the Superior Court. A motion was made to dismiss the appeal on the ground that no appeal is provided for, by law, from the report of the commissioners made to the Ordinary. The Superior Court sustained the objection and dismissed the appeal. And this Court affirmed the judgment. Judge Lumpkin, who delivered the opinion of the Court, says : " The only question in this case is, whether an appeal will lie upon the report of commissioners appointed under the Act of 1856, to set apart one year's provisions for the family, out of the estate of the deceased. We think not. There is no verdict, no judgment of the Court to appeal from. The Act simply directs the report to be recorded by the Ordinary. This is a mere ministerial act to preserve the evidence, and to show upon the books of the Ordinary's office the manner in which so much of the estate was disposed of; neither can the commissioners, whose report is sought to be set aside, be considered the Ordinary *pro hac vice. This would violate the Constitution which directs who shall be Ordinary.*"

In that case $800 00 of the estate of the deceased was disposed of by the commissioners, who returned their award into the Ordinary's office, who recorded the same ; but this was held not to be the judgment of the Ordinary from which an appeal lay, nor were the commissioners, thus disposing of the estate of the deceased, to be considered *the Ordinary* for the occasion, as the Constitution had prescribed who should be Ordinary. The commissioners performed functions which properly pertain to the Ordinary's office in the disposition of the estate of a deceased person, but as they were not *the Ordinary* no appeal lay from their decision, as from a decision of the Ordinary.

The objection that there is no mode prescribed by law for

Henderson *vs.* Pope.

the corrections of its errors does not, however, apply to the Court of *special jurisdiction,* now under consideration. In view of its location in the classification of Courts, made by the Constitution, it is very clear that it was to rank below the Superior Court. The Constitution gives the Judges of the Superior Courts authority to issue on their sanction, writs of *certiorari,* to correct errors in inferior judicatories.

Section 237 of the Code defines some of the powers of the Judge of the Superior Court, and among others reiterates that he may grant writs of *certiorari.* Section 238 then declares that the authority, granted in the preceding section to each Judge in his own circuit, may be exercised by any Judge of another circuit, whenever the resident Judge is absent from the circuit so that the business cannot be done as speedily as necessary, or is indisposed, or interested, or is laboring under any disqualification or inability to serve, or in case the circuit should be from any cause without a Judge.

Here then is a legal Court, inferior to the Superior Court, a tribunal created by the Legislature with special jurisdiction to try this very class of cases, and here is the power, plainly given to any Judge of the Superior Courts of this State, to grant a writ of *certiorari,* to correct the errors committed by this special tribunal; and the Constitution provides for a writ of error from the decision of the Judge of the Superior Courts to this Court, to correct his errors upon the decision which he may make on the writ of *certiorari.*

In this manner the whole system harmonizes, and there is no encroachment by one department of the Government upon the power conferred by the Constitution upon another. This also harmonizes with the former decisions of this Court, while it affords two remedies for the enforcement of contracts, or the redress of wrongs, in the class of cases to which this belongs, which are not only plain and simple, but full and complete.

The defendant in error having raised the question of jurisdiction, and having objected to the hearing of this Court, it follows from the reasons already given, that, in my judgment this writ of error ought to be dismissed.